USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:_____
DATE FILED: 3/22/2018

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SHERWIN WILSON,

Plaintiff,

-against-

HSBC BANK, USA, as trustee of Bcap-2008-in1; a
securitized trust; MORTGAGEIT, INC., a corporation;
MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC., as nominee of Mortageit, Inc.;
PRUDENTIAL RAND REALTY, INC., a business;
ALL PERSONS AND ENTITIES WITH AN
INTEREST IN REAL PROPERTY LOCATED AT 4
WILLIAM STREET, OSSINING, NEW YORK, and
DOES 1-100, inclusively,

Defendants.

No. 16-cv-8405 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

Plaintiff Sherwin A. Wilson, proceeding *pro se*, commenced this action against HSBC

Bank, USA, MortgageIT, Inc., Mortgage Electronic Registration Systems, Inc., Prudential Rand

Realty, Inc., all persons and entities with an interest in real property located at 4 William Street,

Ossining, New York, and Does 1–100. (*See* Compl., ECF No. 1.) Plaintiff brings fourteen claims

sounding in: (1) negligence; (2) declaratory judgment; (3) temporary restraining order and

preliminary injunction; (4) fraudulent misrepresentation; (5) breach of duty of good faith and fair

dealing; (6) quiet title; (7) accounting; (8) violation of the Fair Debt Collection Practices Act

(FDCPA); (9) specific performance; (10) breach of written and/or oral contracts; (11) violation of

the Racketeer Influenced and Corrupt Organizations Act (RICO); (12) rescission of note and deed

of trust under the Truth in Lending Act (TILA) and restitution of sums paid; (13) violation of the

Fair Credit Reporting Act (FCRA); and (14) violation of 42 U.S.C. § 1983. Before the Court are

1

Defendants' Motion to Dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6), and Plaintiff's Cross-Motion to Amend the Complaint. For the following reasons, Defendants' motion is GRANTED and Plaintiff's motion is DENIED. Plaintiff, however, is granted leave to amend part of the claim arising under the Fair Credit Reporting Act as described below.

## **BACKGROUND**

On or about May 4, 2006, Plaintiff, an African American male, executed a mortgage loan on a one-family home located on 4 William Street, Ossining, New York (the "subject property"). (Compl. ¶ 13(a).)[1] The loan "consisted of a Note and Mortgage" that was "crafted" by First Franklin, a division of National City Bank, Inc. (*Id.* ¶¶ 12, 13(a).)[2] Plaintiff began making payments on the mortgage pursuant to the agreement. After "escrow closed," however, a dispute arose concerning the terms and conditions of the agreement. (*Id.* ¶ 13(a).) According to Plaintiff, the terms and conditions of the agreement did not match what was promised by First Franklin. (*Id.* ¶ 13.) First Franklin purportedly promised lower monthly payments on the loan— a problem that Plaintiff was unable to preempt because First Franklin did not provide the closing documents to confirm the actual monthly payments. (*Id.* ¶ 76.) Plaintiff complained about the difference in monthly payments (*Id.*) and "protested" the higher payments and interest rates on the loan. (*Id.* ¶ 76a.) The outcome of the complaints is unknown.

---

[1] Defendants claim that Plaintiff executed the mortgage loan on the subject property with another individual, Robert Hum. Defendants also claim that Plaintiff did not sign the Note for the principal amount of $305,000. (Mem. of Law in Supp. of Mot. to Dismiss Pl. Compl. ("Def. Mot.") 2, ECF No. 26.)

[2] Defendant HSBC acquired the rights to the loan soon thereafter. (*See* Decl. of Shane M. Biffar in Supp. of Mot. to Dismiss ("Biffar Decl."), Exh. 3 ("Foreclosure Action Complaint"), ECF No. 27.)

On October 8, 2010, Defendant HSBC Bank, USA ("HSBC") commenced a Foreclosure Action on the subject property in New York State Supreme Court, County of Westchester. (Mem. of Law in Supp. of Mot. to Dismiss Pl. Compl. ("Def. Mot.") 2, ECF No. 26; Decl. of Shane M. Biffar in Supp. of Mot. to Dismiss ("Biffar Decl."), Exh. 3 ("Foreclosure Action Complaint"), ECF No. 27.)[3]  The Complaint alleged that Robert Hum and Plaintiff Wilson failed to comply with the conditions of the mortgage loan by failing to pay the required charges. (*Id.*) Plaintiff Wilson answered the complaint and alleged that HSBC did not notify him of the default nor provide the necessary information to cure it. (Biffar Decl., Exh. 4 ("Answer to Foreclosure Complaint"), ECF No. 27.)

On or about October 2012, Plaintiff spoke to a representative of Defendant HSBC via telephone about "reforming or 'novating' the Note to better terms and payments." (Compl. ¶ 76b.) A loan negotiator by the name of Carmela Diaz stated that she represented Plaintiff's lender and informed Plaintiff about a program for their "good paying borrowers." (*Id.* 76b.) Diaz informed Plaintiff that by missing payments for three consecutive months, the lender would guarantee a new Note with "better terms" and that Plaintiff's monthly payment would decrease.

---

[3] When the Court assesses a 12(b)(6) motion "the court may consider the facts alleged in the complaint, any document attached as an exhibit or incorporated by reference and matters of which judicial notice may be taken." *Yeiser v. GMAC Mortg. Corp.*, 535 F. Supp. 2d 413, 420 (S.D.N.Y. 2008) (citing Fed. R. Civ. P. 10(c); *Dangler v. N.Y. City Off Track Betting Corp.*, 193 F.3d 130, 138 (2d Cir.1999)); *see also TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 498 (2d Cir. 2014) ("A court may consider a res judicata defense on a Rule 12(b)(6) motion to dismiss when the court's inquiry is limited to the plaintiff's complaint, documents attached or incorporated therein, and materials appropriate for judicial notice"). Accordingly, the Court takes into consideration documents filed in, and the final judgment of, the state court Foreclosure Action provided by the Defendants because they are integral to the complaint and are precisely the type of documents which the Court may take judicial notice of.  *See e.g.*, *Nath v. JP Morgan Chase Bank*, No. 15-CV-3937 (KMK), 2016 WL 5791193, at *1 (S.D.N.Y. Sept. 30, 2016) (drawing facts from "the Complaint, as well as the various transaction documents and state court documents attached to Private Defendants' moving papers" in a federal court action stemming from a state court Foreclosure Action).

If Plaintiff agreed, Diaz promised him that the home would not be foreclosed and that the loan would not be considered defaulted. (*Id.* ¶ 76b.) Plaintiff agreed to participate in the program and considered participation to be a novation of the loan. (*Id.* ¶¶ 76.a, 76b.) After missing payments for three consecutive months, HSBC rejected Plaintiff's payment on the fourth month. Plaintiff called HSBC and was told by Diaz that they had no record of the loan novation, that Plaintiff defaulted on the loan, and that the property would be foreclosed. (*Id.* ¶ 76.c.)

On March 31, 2016, the Supreme Court of New York, County of Westchester, issued a judgment of foreclosure and sale concerning the subject property. (Biffar Decl., Exh. 5 ("Foreclosure Judgment"), ECF No. 27.) The Foreclosure Judgment found that Plaintiff HSBC was entitled to judgment establishing the validity of the mortgage and that Plaintiff HSBC was entitled to recover upon the mortgage the sum of $495,262.28. The court then ordered the foreclosure sale of the subject property and that "each and all of the defendants in this action . . . are forever barred and foreclosed of all right, claim, lien, title, interest and equity of redemption in said premises and every part thereof." (*Id.*) Notwithstanding the foreclosure judgment, Plaintiff now claims sole ownership of the subject property by way of "Grant or Warranty Deed." (*Id.* ¶¶ 7–8.)

## STANDARD ON MOTION TO DISMISS

"A case is properly dismissed for lack of subject matter jurisdiction under [Federal] Rule [of Civil Procedure] 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Nike, Inc. v. Already, LLC*, 663 F.3d 89, 94 (2d Cir. 2011) (internal citation and quotation marks omitted). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Morrison v. Nat'l Australia Bank Ltd.*,

4

547 F.3d 167, 170 (2d Cir. 2008) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir.

2000)). In assessing whether there is subject matter jurisdiction, the Court must accept as true all

material facts alleged in the complaint, *Conyers v. Rossides*, 558 F.3d 137, 143 (2d Cir. 2009),

but "the court may resolve [any] disputed jurisdictional fact issues by referring to evidence

outside of the pleadings, such as affidavits . . ." *Zappia Middle E. Const. Co. v. Emirate of Abu

Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000). "Courts should go to lengths to ensure that

inexperienced *pro se* litigants do not inadvertently forfeit rights or winning arguments; this

'special solicitude' includes a liberal construction of papers and a flexibility on some otherwise-

rigid procedural rules." *Robinson v. HSBC Mortg. Serv., Inc.*, 15-CV-5480 (VEC), 2017 WL

570935, at *2 (S.D.N.Y. Feb. 10, 2017) (quotations and citation omitted).

A Rule 12(b)(6) motion tests the legal sufficiency of a complaint and requires a court to

determine whether the facts alleged are sufficient to show that the plaintiff has a plausible claim

for relief. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). When ruling on a Rule 12(b)(6)

motion, a court must accept the factual allegations set forth in the complaint as true and draw all

reasonable inferences in favor of the plaintiff. *See, e.g., Holmes v. Grubman*, 568 F.3d 329, 335

(2d Cir. 2009). To survive such a motion, however, the plaintiff must plead sufficient facts "to

state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

(2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Iqbal*, 556 U.S. at 678. In determining whether a complaint states a plausible claim for relief, a

district court must consider the context and "draw on its judicial experience and common sense."

*Id.* at 679.  In assessing whether this standard has been met, courts take "all factual allegations

contained in the complaint" as true, *Twombly*, 550 U.S. at 572, and "draw all inferences in the

light most favorable to the non-moving party[ ],'" *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007) (citation omitted). A plaintiff must show "more than a sheer possibility that a defendant has acted unlawfully," *id.,* and cannot rely on mere "labels and conclusions" to support a claim. *Twombly*, 550 U.S. at 555. If the plaintiff's pleadings "have not nudged [his or her] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Id.* at 570.

Rule 12(b)(6) warrants dismissal of a claim under the doctrine of res judicata where "it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law." *Conopco, Inc. v. Roll Int'l*, 231 F.3d 82, 86 (2d Cir. 2000).

## **DISCUSSION**

Plaintiff brings fourteen causes of action. Defendants move to dismiss all fourteen causes of action on various grounds pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6). Defendants' first contention is that the Court lacks subject matter jurisdiction pursuant to the *Rooker-Feldman* doctrine.[4]

### ***Rooker-Feldman***

The *Rooker-Feldman* doctrine "denies 'federal district courts . . . jurisdiction over cases that essentially amount to appeals of state court judgments." *Barbato v. U.S. Bank National Association*, 14-CV-2233 (NSR), 2016 WL 158588, at *2 (S.D.N.Y. Jan. 12, 2016) (citing *Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 426 (2d Cir. 2014)). To apply the *Rooker-Feldman* doctrine, the Court must find that the following four requirements are met:

---

[4] The *Rooker-Feldman* doctrine acquired its name from a set of Supreme Court cases: *Rooker v. Fidelity Trust Co.,* 263 U.S. 413 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

> (1) the federal-court plaintiff lost in state court; (2) the plaintiff 'complain[s] of injuries caused by a state court judgment'; (3) the plaintiff 'invite[s] . . . review and rejection of that judgment'; and (4) the state judgment was 'rendered before the district court proceedings commenced.'

*Vossbrinck*, 773 F.3d at 426 (citing *Hoblock v. Albany Cnty. Bd. of Elecs.*, 422 F.3d 77, 85 (2d Cir. 2005)). The Second Circuit characterizes the first and fourth elements as "procedural" and the second and third elements as "substantive." *Hoblock*, 422 F.3d at 85.

The Doctrine is a narrow one and is "confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005) Buttressing the doctrine is the principle "expressed by Congress in 28 U.S.C. § [] 1257, that within the federal judicial system, only the Supreme Court may review state-court decisions." *Webster v. Wells Fargo Bank, N.A.*, No. 08 Civ. 10145, 2009 WL 5178654, at *5 (S.D.N.Y. Dec. 23, 2009) (quotations omitted) (citing *Green v. Mattingly*, 585 F.3d 97, 101 (2d Cir. 2009)).

Federal suits that raise "independent claims"—meaning, claims that are not inextricably intertwined with the state court judgment, *Robinson*, 2017 WL 570935, at *3— are not barred by the *Rooker-Feldman* doctrine. *Hoblock*, 422 F.3d at 86–87. The Second Circuit made clear that the "doctrine turns not on the similarity between a party's state-court and federal-court claims (which is, generally speaking, the focus of ordinary preclusion law), but rather on the causal relationship between the state-court judgment and the injury of which the party complains in federal court." *McKithen v. Brown*, 481 F.3d 89, 97–98 (2d Cir. 2007); *see also Nath v. JP Morgan Chase Bank*, No. 15-CV-3937 (KMK), 2016 WL 5791193, at *6 (S.D.N.Y Sept. 30, 2016) (noting that the "core requirement" of the doctrine is that "a plaintiff's injuries be caused

by the state judgment"); *Peterson v. Wells Fargo Trustee*, No. 16-3635-cv, 2018 WL 341734, at

*2 (2d Cir. Jan. 10, 2018) (summ. order) (noting that the *Rooker-Feldman* doctrine "deprive[s]

federal courts of subject-matter jurisdiction only to the extent [Plaintiff's] prayer for relief seeks

vacatur of the state court's foreclosure judgment, not to the extent []he seeks compensation for

defendants' fraud while leaving the state judgment in place"). This causal requirement is

satisfied when the state court is the decision maker whose action produces the injury. *Robinson*,

2017 WL 570935, at *3 (citing *Sindone v. Kelly*, 439 F. Supp. 2d 268, 272 (S.D.N.Y. 2006)).

      This is not the first time a mortgagor has filed suit in federal court following an adverse

state-court foreclosure judgment. In similar situations "[c]ourts in this Circuit have consistently

held that any attack on a judgment of foreclosure is clearly barred by the *Rooker-Feldman*

doctrine." *Webster*, 2009 WL 5178654, at *5 (quotations and citations omitted); *see also Davis v.

JP Morgan Chase Bank*, No. 14-CV-6263 (KMK), 2016 WL 1267800, at *6 (S.D.N.Y. March

30, 2016) (collecting cases).

      Here, the first and fourth elements of the doctrine are clearly met. Plaintiff "lost" in New

York State Supreme Court when that court ruled against Plaintiff in the foreclosure suit brought

by Defendant HSBC.  (Foreclosure Judgment 1.) Second, the state court issued its decision on

March, 31 2016—several months before Plaintiff commenced this suit on October 28, 2016.

      As a preliminary matter, the Court holds that the *Rooker-Feldman* doctrine clearly bars

*pro se* Plaintiff's request that the Court review and reject the mortgage foreclosure decision,

restrain the foreclosure sale, cancel, set aside, vacate the notice of default, cancel and reform all

deeds in Plaintiff's name, and invalidate the state court's foreclosure decision. (*See e.g.*, Compl.

at 32–33.) Simply stated, Plaintiff may not ask this Court to reverse the foreclosure judgment.

*See Vossbrinck*, 773 F.3d at 427 ("To the extent [Plaintiff] asks the federal court to grant him

title to his property because the foreclosure judgment was obtained fraudulently, *Rooker–Feldman* bars [Plaintiff's] claim"); *Sylvester v. Bayview Loan Servicing LLC*, 15-CV-1736 (JPO), 2016 WL 3566234, at *5 (S.D.N.Y. June 24, 2016) ("To the extent that Plaintiffs ask this Court to reverse the foreclosure judgment, their claim cannot succeed").

a. Claims Barred by *Rooker-Feldman*[5]

Addressing the substantive elements of the *Rooker-Feldman* doctrine, the Court finds that Plaintiff's claims seeking declaratory judgment, a temporary restraining order and preliminary injunction, quiet title, accounting, specific performance, and rescission of note and deed of trust under TILA, clearly invite this Court to review and reject the state court judgment, and all complain of injuries caused by the state court foreclosure judgment, and are, thus, barred by the *Rooker-Feldman* doctrine. *See Vossbrinck*, 773 F.3d at 426. The Court now turns to each of Plaintiff's claims.

Plaintiff's second cause of action for declaratory judgment asks the court to make findings on the "rights and duties arising under a promissory note and deed of trust[,] the ownership of which may have been abrogated." (Compl. ¶ 48.) Plaintiff argues that such a finding will show that "HSBC cannot declare a default, sue to foreclose or continue its relentless to do so in NY state courts illegally." (*Id.*) Plaintiff's third cause of action asks the Court to "stop all further state litigation by TRO and injunction by writ of prohibition or mandate, of plaintiff's subject property." (*Id.* ¶ 53.) More specifically, as the title of the section reads, Plaintiff asks the Court to enjoin the foreclosure sale of the subject property. The *Rooker-Feldman* doctrine patently prohibits review of both of these claims because it would require the Court to review

_____

[5] Alternatively, the Court also finds that these six claims are barred by the doctrine of res judicata because they stem from the same transaction as the Foreclosure Action and should have been raised as either defenses or counterclaims in state court.

and reject the state court ruling, and Plaintiff complains of an injury caused by the state court judgment. *See Wenegieme v. U.S. Bank National Association*, 16 Civ. 6548 (ER), 2017 WL 1857254, at *3 (S.D.N.Y. May 4, 2017) (noting that the *Rooker-Feldman* doctrine prevents federal district courts from exercising jurisdiction over a motion for a temporary restraining order and preliminary injunction of a state court foreclosure ruling).

Plaintiff's sixth cause of action, to quiet title, asks the Court to determine ownership of the note, mortgage, and real property interest. Plaintiff seeks to "quite title . . . [as of] the date of close of escrow and for a judicial declaration that the title to the Subject Property is vested in Plaintiff alone and that any Defendant . . . be declared to have no interest estate, right, title, or interest in the subject property" and that they "be forever enjoined from asserting any estate, right title or interest in the Subject Property." (Compl. ¶ 112.) Plaintiff again invites the Court to find that "defendant does not own the Note or the Mortgage, thus invalidating the foreclosure judgment and returning the property to Plaintiff[]." *Barbato*, 2016 WL 158588, at *3 (holding that Plaintiff's quiet title claim would require the court to review the state proceedings and determine that the foreclosure judgment was issued in error); *Nath*, 2016 WL 5791193, at *7 (holding that Plaintiff's quiet title claim "undeniablby complain[s] of, and seek[s] to have remedied, the State Foreclosure Judgment"). Accordingly, because Plaintiff complains of an injury caused by the state Foreclosure Action and asks this court to review and reject the judgment, this claim is barred by the doctrine.

Plaintiff's seventh cause of action for accounting against all the Defendants "demands an accounting of the[] entire loan account from any and all defendants and Does." (Compl. ¶ 124.) Plaintiff seeks to "determine the correct amount of the loan, note, payments made, payments due, credits due and payoff balance and that responsible defendants pay the cost of their cause of

action as part of the damages awarded to plaintiff." (*Id.*) Not only does this claim invite this Court to review and reject the state court's finding, but the claim also complains about an injury caused by the state court ruling, namely, the purported incorrect amount due on the loan. The New York State Supreme Court appointed a referee to "ascertain and compute the amount due to the plaintiff [HSBC] pursuant to the note and mortgage." (Foreclosure Judgment 1.) The referee found, and the state court adopted the finding, that a sum of $495,262.28 was due to HSBC as of December 3, 2015 on the note and mortgage. (*Id.* at 2–3.) Therefore, because Plaintiff asks this Court to review and reject the state court judgment, and Plaintiff complains of an injury caused by the judgment, this claim is likewise barred.

Plaintiff's ninth cause of action for specific performance is likewise barred by the doctrine. Plaintiff claims that the oral contract to novate the loan should be enforced. The terms of the purported contract called for "reduced monthly payments and that no foreclosure will be imposed based on such promises." (Compl. ¶ 148.) This claim would require the Court to reject the state court judgment and halt the foreclosure sale of the subject property. Consequently, this claim too is barred by the doctrine because it would require the Court to review the state court judgment and the injury complained of—the foreclosure sale of the property— was caused by the state court judgment.

Plaintiff's twelfth cause of action for rescission of note and deed of trust under the Truth in Lending Act ("TILA") and restitution is also barred by the doctrine. Plaintiff claims that the Note "was operatively cancelled" when "[w]ithin 3 years of the consummation of the loan . . . a writing from plaintiff to defendant lenders was sent cancelling the Note obligation." (Compl. ¶ 164.) Consequently, Plaintiff alleges that "they have a right to rescind the active note and deed of trust." (*Id.* ¶ 165.) Plaintiff further seeks rescission of the Note and that restitution be ordered for

"all sums paid to defendant lender under the original note and subsequent payments amounting to not less than $250,000." (*Id.* ¶ 166.) This claim would certainly call the Court to review and reject the state court judgment because it calls for a different finding on the Note's viability and sums due. Further, the injury claimed—that Plaintiff paid and continues to pay sums not due to HSBC because Plaintiff rescinded the Note—was caused by the state court judgment. Plaintiff is effectively asking the Court to find that the Note and loan were void and that this Court order that HSBC return the sums that the state court found were due. This, the Court cannot do. *See Webster*, 2009 WL 5178654, at *6 (noting that "Plaintiffs invite review and rejection of the foreclosure judgment because they ask this Court to hold that the subject mortgage is void based on" their claim).

### b. Claims not barred by *Rooker-Feldman*

Plaintiff's other eight claims are not barred by the *Rooker-Feldman* doctrine because they do not invite this Court to review the state court judgment nor is the Plaintiff complaining of an injury caused by the state court judgment. *See Holmes v. Caliber Home Lo2017 ans, Inc.*, No. 16-CV-3344 (KMK), 2017 WL 3267766, at *7 (S.D.N.Y. July 31, 2017) (noting that the "core requirement" of the *Rooker-Feldman* doctrine is that Plaintiff's injuries be caused by the state judgment). Thus, the doctrine "would not prevent Plaintiff from 'raising federal claims based on the same facts as a prior state case . . . so long as . . . [P]laintiff complains of an injury *independent of* an adverse state court decision.'" *Davis*, 2016 WL 1267800, at * 6 (quoting *Scott v. Capital One, Nat. Associates*, No. 12–CV–00183 (ER), 2013 WL 1655992, at *3 (S.D.N.Y. April 17, 2013))).

Plaintiff's first cause of action for negligence claims that the Defendants were negligent in their servicing of Plaintiff's loan. (Compl. ¶ 37.) Specifically, Defendant's were negligent in

calculating the sums due under the loan and failing to properly credit payments made by Plaintiff towards the loan. (*Id.*) As a result, Plaintiff seeks a sum of "not less than $500,000." (*Id,* ¶ 43.) This claim is not barred by the *Rooker-Feldman* doctrine because Plaintiff is not complaining of an injury caused by the state court judgment since the "injury" in question was caused by the servicing of the loan agreement, which occurred prior to the state court judgment. Thus, the claim is not barred by the doctrine. *Vossbrinck*, 773 F.3d at 426.

Plaintiff's fourth cause of action for fraudulent misrepresentation alleges that Defendants engaged in two fraudulent schemes. First, Plaintiff alleges that the loan originator, First Franklin, represented that monthly payments would be less than they ended up being. (Compl. ¶¶ 75.1, 76.) The Second scheme, executed by Defendant HSBC and its agents (*Id.* ¶ 75.1), involved a telephone conversation between Plaintiff and an HSBC representative, Carmela Diaz, who promised Plaintiff that by withholding loan payments for three months, he would qualify for a new monthly payment rate and the subject property would not be foreclosed nor the loan defaulted. (*Id.* ¶ 76b.) Plaintiff seeks "not less than five million dollars." (*Id.* ¶ 77.) Here, Plaintiff's complaint can be liberally construed to allege injury stemming from the same factual predicate as, but not caused by, the foreclosure judgment. *Holmes*, 2017 WL 3267766, at *7. This claim would not require this Court to sit in review of, or reject, the state court judgment because the Court, if it reached the merits, would have to determine whether Defendants engaged in fraud prior to the commencement of the foreclosure proceeding. *See Vossbrinck*, 773 F.3d at 427–28. Further, the relief Plaintiff seeks evinces that the injury he complains of occurred prior to the foreclosure judgment and was not caused by the judgment. *Id.* at 427.

The second part of this claim however, may require the Court to sit in review of the state court judgment. If this Court were to reach the merits of HSBC's purported fraud, the Court

would have to decide whether or not the default was fraudulently induced, which may call on this Court to review the state Court judgment. Nevertheless, the injury complained of was not caused by the state court judgment, but rather the fact that Defendants began foreclosure proceedings in the first place. Here, the Court may be asked to deny a legal conclusion that the state court may have reached, but it is not being asked to reverse the state court judgment. *See Exxon*, 544 U.S. at 293 ("Nor does § 1257 stop a district court from exercising subject-matter jurisdiction simply because a party attempts to litigate in federal court a matter previously litigated in state court. If a federal plaintiff present[s] some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party . . ., then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion.) (quotations and citations omitted); *Hoblock*, 422 F.3d at 87 ("we know that an independent (and therefore non-barred) claim may den[y] a legal conclusion reached by the state court.") (quotations and citations omitted). Thus, neither fraud claim is barred by the *Rooker-Feldman* doctrine.

Plaintiff's fifth cause of action for breach of good faith and fair dealing against all Defendants alleges that Defendants breached the promissory Note and secondary promises to novate the loan. (Compl. ¶ 83.1.) Plaintiff alleges that the Note and novation had implied covenants of good faith and fair dealing and the Defendants breached them through their fraudulent conduct described in the fourth cause of action. (*See id.* ¶ 83.2.) Plaintiff seeks damages in the sum of "in no case less than two million dollars." (*Id.* ¶ 87.) This claim is not barred by *Rooker-Feldman* because the injury complained of was not caused by the foreclosure judgment. *See Holmes*, 2017 WL 3267766, at *7. Here, Plaintiff is not seeking the rejection of the state foreclosure judgment, but rather, complains of a breach of contract that occurred prior

to the foreclosure judgment and seeks remedies independent of the judgment. Thus, the claim is not barred.

Plaintiff's eighth cause of action for violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1601, claims that Defendants, as alleged debt collectors, demanded sums for payments not due or owed by Plaintiff to Defendant prior to the foreclosure proceeding. (Compl. ¶ 127.) Plaintiff seeks damages under the Act for expenses, fees incurred as well as sanctions. (*Id.* ¶ 128.) This claim is not barred by the *Rooker-Feldman* doctrine because it does not invite the Court to reject the state court judgment and the injury complained of was not caused by the foreclosure judgment, but rather Defendants' actions prior to the judgment. Thus, the claim is not barred under this doctrine. *See Schuh v. Druckman & Sinel, L.L.P.*, 602 F. Supp. 2d 454, 461 (S.D.N.Y. 2009) (holding that Plaintiff's FDCPA claim was not barred by the *Rooker-Feldman* doctrine because Plaintiffs did not complain of an injury caused by the state court judgment); *Francis v. Nichols*, No. 16-CV-1848 (CS), 2017 WL 1064719, *8 (S.D.N.Y. March 21, 2017) (holding that the *Rooker-Feldman* doctrine barred FDCPA claims because the claims called for the Court to sit in review of the state court judgment and because the damages sought were intertwined with questions of whether the Defendant owned the Note or the Mortgage).

The tenth cause of action for breach of two independent written and/or oral contracts against HSBC is not barred by the doctrine. Plaintiff alleges that Defendant HSBC breached two contracts. The first concerns HSBC's alleged promise that if Plaintiff stopped making payments for 90 days, HSBC would reduce Plaintiff's monthly payments. (Compl. ¶ 151.) The second alleged agreement was HSBC's promise not to foreclose or "declare a default" on the subject property. (*Id.* ¶ 152.) Plaintiff suffered "loss of down payment, excess charges including

overpayment of principal and interest for each month after the agreed to reduction under the novation agreement, excessive fees, charges, forced placed insurance, and miscellaneous fees." (*Id.* ¶ 152.) Plaintiff seeks damages in the sum of $500,000. (*Id.* ¶ 153.) This claim does not invite the Court to review and reject the state court judgment. Further, the injury was caused by the purported breach of contract that lead to the foreclosure proceedings, and does not complain of the state court foreclosure decisions itself. *Holmes*, 2017 WL 3267766, at *7. Thus, this independent claim is no barred.

Plaintiff's eleventh cause of action claims violations of the Racketeering Influenced Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962. Plaintiff alleges that "a false debt . . . was being collected, that at least two efforts and attempts were made to falsely collect, that the evidence shows intent to defraud and cheat plaintiff in a scheme to fabricate the truth of the error then add additional charges to the loan, then and now, never due." (Compl. ¶ 162.) Plaintiff seeks damages "in no event, less than $50,000,000." (*Id.* ¶ 163.) This claim is also not barred by the *Rooker-Feldman* doctrine because even though the claim may invite the Court to review parts of the state court judgment, the injury complained of was not caused by the state foreclosure judgment. The alleged conduct occurred before the foreclosure action began, and does not seek relief from the state court judgment.

Plaintiff's thirteenth cause of action for violations of the Fair Credit Reporting Act ("FCRA"), 18 U.S.C. § 1681s-2(b), alleges that Plaintiff's credit score was damaged by Defendants' purportedly fraudulent actions which, in turn, prompted the loan default and foreclosure proceeding. (*See* ¶ 171–72.) Plaintiff seeks "equitable relief" in the form of ordering credit reporting agencies "to correct" their rating and damages against Defendants who caused the harm. (*Id.* ¶ 173.) The FCRA claims are not barred by the doctrine because although they

16

certainly complain of an injury caused by the foreclosure suit, they do not invite the review and rejection of the state court judgment. The claims would require the Court to analyze whether the parties in question followed the proper procedures under the FCRA—inquiries the state court was not called upon to make.

Plaintiff's fourteenth cause of action for violation of 42 U.S.C. § 1983 claims that the loan originator provided Plaintiff with less favorable "loan products" because of Plaintiff's race. (Compl. ¶ 178.) Those terms included "higher interest rates, higher payments due per month and higher purchase price and added included charges classifying the loan in what was known as a 'subprime' loan." (*Id.*) This claim does not invite the Court to review or reject the state court judgment nor does it complain of injuries caused by the state court judgment. Plaintiff attempts to address alleged civil rights violations that are independent of the foreclosure judgment and would not cause this Court to reject that judgment, and thus is not barred.

Accordingly, the Court finds that the *Rooker-Feldman* doctrine does not bar the adjudication of Plaintiff's first, fourth, fifth, eighth, tenth, eleventh, thirteenth, and fourteenth causes of action.

### Res Judicata and Collateral Estoppel

Defendants argue that Plaintiff's claims are barred by the doctrines of res judicata and collateral estoppel because the claims arise from the same transaction at issue in the foreclosure action, namely, the mortgage on the subject property and corresponding loan. (Def. Mot. 6.) Plaintiff does not provide a robust opposition to this argument and merely rejects the proposition that any of the claims are barred by res judicata or collateral estoppel. (Pl. Opp. Mot. to Dismiss

("Pl. Opp.") 2, ECF No. 29.)[6] The Court finds that Plaintiff's first, fourth, fifth, eighth, tenth, and eleventh causes of action are all barred by res judicata.

The doctrine of res judicata, also known as claim preclusion, provides that "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Allen v. McCurry*, 449 U.S. 90, 94 (1980); *Rates Tech. Inc. v. Speakeasy, Inc.*, 685 F.3d 163, 169 (2d Cir. 2012). Federal Rule of Civil Procedure 12(b)(6) warrants dismissal of claims under the doctrine of res judicata where "it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law." *Conopco, Inc. v. Roll Int'l*, 231 F.3d 82, 86 (2d Cir. 2000).

Since the prior judgment in question was issued by a New York State Court, this Court's analysis is governed by New York State law "which has adopted a transactional approach to res judicata, barring a later claim arising out of the same factual grouping as an earlier litigated claim even if the later claim is based on different legal theories or seeks dissimilar or additional relief." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994).

In New York, "once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy." *Gianatasio v. D'Agostino*, 862 F. Supp. 2d 343, 348 (S.D.N.Y. 2012) (quoting *O'Brien v. City of Syracuse*, 54 N.Y.2d 353, 357 (1981)). However, new claims

---

[6] In fact, Plaintiff's Opposition to the Motion to Dismiss largely focuses on two issues: (1) Defendants' Statute of Limitations argument; and (2) that this case should be referred to arbitration. Plaintiff, for the first time, argues that this case should be referred to arbitration pursuant to the Federal Arbitration Act. (Pl. Opp. 4.) Plaintiff also argues that the state court foreclosure judgment was "void on its face" for violation of the FAA arbitration requirements. (Pl. Opp. 8.) This argument is clearly barred by the *Rooker-Feldman* doctrine and, in any event, should have been raised during the foreclosure proceeding.

arising subsequent to a prior action are not barred by res judicata, irrespective of whether or not they are premised upon facts stemming from the same "course of conduct." *Storey v. Cello Holdings, L.L.C.*, 347 F.3d 370, 383 (2d Cir. 2003). "Whether or not the first judgment will have preclusive effect depends in part on whether the same transaction or connected series of transactions is at issue, whether the same evidence is needed to support both claims, and whether the facts essential to the second were present in the first." *Morales v. SUNY Purchase College*, 14-cv-8193 (NSR), 2015 WL 7430864, at *3 (S.D.N.Y. Nov. 19, 2015) (quotations and citations omitted).

Taking these principles together, res judicata applies where "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the plaintiff or those in privity with [him]; (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." *Monahan v. New York City Dep't of Corr.*, 214 F.3d 275, 285 (2d Cir. 2000) (internal citations omitted).

"'A judgment of foreclosure and sale entered against a defendant is final as to all questions at issue between the parties, and concludes all matters of defense which were or might have been litigated in the foreclosure action.'" *Signature Bank v. Epstein*, 95 A.D.3d 1199, 1200, 945 N.Y.S.2d 347 (2d Dept. 2012) (quoting *Long Is. Sav. Bank v. Mihalios*, 269 A.D.2d 502, 503, 704 N. Y.S.2d 483 (2d Dept. 2000)).

Collateral estoppel, or issue preclusion, is a companion doctrine that bars the re-litigation of issues that were ""clearly raised in a prior action or proceeding and decided against that party . . . , whether or not the tribunals or causes of action are the same." *Town of Ramopo, New York v. Town of Clarkstown*, No. 16 Civ. 2004 (NSR), 2017 WL 782500, at * 6 (S.D.N.Y. Feb. 27, 2017) (citing *Leather v. Eyck*, 180 F.3d 420, 425 (2d Cir. 1999)). Collateral Estoppel under New

York law is applicable upon a showing of two factors: "First, the identical issue necessarily must have been decided in the prior action and be decisive of the present action, and second, the party to be precluded from relitigating the issue must have had a full and fair opportunity to contest the prior determination." *Kaufman v. Eli Lilly & Co.*, 65 N.Y.2d 449, 455 (1985). The federal test for the application of collateral estoppel distributes these same elements into a four-part test: "(1) the identical issue was raised in a previous proceeding; (2) the issue was 'actually litigated and decided' in the previous proceeding; (3) the party had a 'full and fair opportunity' to litigate the issue; and (4) the resolution of the issue was 'necessary to support a valid and final judgment on the merits.'" *Boguslavsky v. Kaplan*, 159 F.3d 715, 720 (2d Cir. 1998) (*citing Interoceanica Corp. v. Sound Pilots, Inc.*, 107 F.3d 86, 91 (2d Cir.1997)).

Turning to the present case, it is clear that the foreclosure proceeding was an "adjudication on the merits" and involved the plaintiff, Defendant HSBC and those in privity. *Pantoja v. Banco Popular*, No. 11 CV 3636(VB), 2012 WL 4069297, at *4 (S.D.N.Y. Aug. 9, 2012) (noting that a "Foreclosure Action is a final judgment"); *Gordon v. First Franklin Financial Corp.*, 15-CV-0775 (SJF)(AKT), 2016 WL 792412, at *7 (E.D.N.Y. Feb. 29, 2016) (noting that a "foreclosure judgment constitutes a final adjudication on the merits").

Plaintiff's first cause of action for negligence alleges that the Defendants were negligent in servicing Plaintiff's loan. (Compl. ¶ 37.) This claim arises out of the same transaction as the state foreclosure action and should have been raised as a defense or counterclaim in that action. Thus, the claim is barred. *See Pantoja*, 2012 WL 4069297, at *4 (holding that claims that "arise squarely out of the terms of the Mortgage and the Realty, and clearly fit within the same factual grouping surrounding the Foreclosure Action" were barred by res judicata).

Plaintiff's fourth cause of action for fraudulent misrepresentation is comprised of two schemes. First, Plaintiff alleges that because of the loan originator's fraud, Plaintiff made higher monthly payments than he was promised. Second, that due to HSBC's fraud, Plaintiff defaulted on the loan and HSBC commenced foreclosure proceedings. Plaintiff was aware of both of the purported frauds during the state foreclosure action. This claim arises out of the same transaction at issue in the foreclosure action and should have been raised as a defense. Thus, this claim is barred. *See Castellano v. JP Morgan Chase Bank, N.A.*, No. 13–cv–03390 (NSR), 2014 WL 988563, at *4 (holding that a claim "that Defendants breached their contract with [Plaintiff] by increasing his monthly mortgage payments . . . arises out of the same transaction as was litigated in the Foreclosure Action").

Plaintiff's fifth cause of action for breach of good faith and fair dealing against all Defendants alleges that Defendants breached the promissory Note and secondary promises to novate the loan. (Compl. ¶ 83.1.) Plaintiff alleges that the Note and novation had implied covenants of good faith and fair dealing and the Defendants breached them through their fraudulent conduct described in the fourth cause of action. (*See id* ¶ 83.2.) This claim should have been raised as a defense during the state foreclosure action because it stems from the same transaction and Plaintiff knew about the purported breach. Consequently, the claim is barred by res judicata. *Graham v. Select Portfolio Servicing, Inc.*, 156 F. Supp. 3d 491, 510 (S.D.N.Y. 2016) (holding that because Plaintiff could have brought his loan modification claims, including a breach of covenant of good faith and fair dealing claim, in the state foreclosure action, the claim was barred by res judicata).

Plaintiff's eighth cause of action for violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1601, claims that Defendants, as debt collectors, demanded sums for

payments not due or owed by Plaintiff to Defendant. (Compl. ¶ 127.)  This claim is barred by res judicata because it stems from the same transaction as the state foreclosure judgment and, thus, should have been raised as a counterclaim.

The tenth cause of action alleges that Defendant HSBC breached two contracts. The first concerns HSBC's alleged promise that if Plaintiff stopped making payments for 90 days, they would reduce Plaintiff's monthly payments. (*Id.* ¶ 151.) The second alleged agreement was HSBC's promise not to foreclose or "declare a default" on the subject property. (*Id.* ¶ 152.)  This claim should have been raised as a defense in the state foreclosure action and is now barred. *Graham*, 156 F. Supp. 3d at 510 (holding that because Plaintiff could have brought his loan modification claims, including a breach of contract claim, in the state foreclosure action, the claim was barred by res judicata).

Plaintiff's eleventh cause of action sounding in a civil RICO violation alleges that "a false debt . . . was being collected, that at least two efforts and attempts were made to falsely collect, that the evidence shows intent to defraud and cheat plaintiff in a scheme to fabricate the truth of the error then add additional charges to the loan, then and now, never due." (Compl. ¶ 162.) This claim is another legal theory arising out of the same transaction that could have been, but was not, raised in the Foreclosure Action and is, thus, barred.  *Pantoja*, 2012 WL 4069297, at *4 (barring a civil RICO claim because Plaintiff could have raised it in the state Foreclosure Action); *see also Tafflin v. Levitt*, 493 U.S. 455, 467 (1990) ("[W]e hold that state courts have concurrent jurisdiction to consider civil claims arising under RICO").

Plaintiff's thirteenth cause of action for violations of the Fair Credit Reporting Act ("FCRA"), 18 U.S.C. § 1681s-2(b)[7], alleges that Plaintiff's credit score was damaged by Defendant HSBC's purportedly fraudulent actions which, in turn, prompted the loan default and foreclosure proceeding. (*See* ¶¶ 37, 171–72.) Plaintiff contacted Defendants to dispute the credit scores and history. Sixty days passed without a response from Defendants, which allowed for "the unlawful deterioration of the scores the credit reporting agency Defendants are required to keep accurate." (Compl. ¶ 173.) Defendant argues that this claim arises out of the same transaction as the state foreclosure suit and could have been filed in the Foreclosure Action. Defendants' argument is correct, in part. A liberal reading of *pro se* Plaintiff's complaint shows that Defendants' action in question began with the creation of the loan and culminated with the foreclosure judgment. (*See* Compl. ¶¶ 37, 170–73.) Accordingly, Plaintiff's claim is comprised of two constituent parts: (1) harm resulting from Defendants' behavior prior to the Foreclosure Action; and (2) harm to Plaintiff's credit score resulting directly from the foreclosure judgment. Those harms resulting from Defendants' behavior prior to the Foreclosure Action are barred by res judicata because they should have been raised as a counterclaim during the foreclosure action.

The second part of the FCRA claim—that the foreclosure judgment harmed Plaintiff's credit score—is not barred because Plaintiff was unaware of the damage to his credit at that time. Liberally construing the complaint, the second part of the claim stems directly from the foreclosure judgment. Consequently, Plaintiff could not have brought this claim in state court. *See Storey*, 347 F.3d at 383 (noting that new claims arising subsequent to a prior action are not

---

[7] A Plaintiff may bring a private right of action under § 1681s-2(b). *Crawford v. Recovery Partners*, No. 12 Civ. 8520, 2014 WL 1695239, at *4 (S.D.N.Y. Apr. 28, 2014).

barred by res judicata even if they are premised upon facts stemming from the same "course of conduct"); *see also Pike v. Freeman*, 266 F.3d 78, 91 (2d Cir. 2001) ("Whether a claim that was not raised in the previous action could have been raised therein 'depends in part on whether the same transaction or connected series of transactions is at issue, and whether the same evidence is needed to support both claims'"); *see also Weitz v. Wagner*, No. CV-07-1106 (ERK)(ETB), 2008 WL 5605669, at *3 (E.D.N.Y. July 24, 2008) (holding that Plaintiff could not have raised his FCRA claim in small claims court because the claim was "separate enough in time, origin, and motivation such that they need not have been raised below"). Thus, the second part of Plaintiff's FCRA claim is not barred by res judicata because Plaintiff had not yet suffered the harm to his credit score resulting from the foreclosure judgment. The Court similarly finds that this claim is not barred by collateral estoppel because it was not raised in the state court proceeding, therefore, the issue was not decided in the prior action. *See Kaufman*, 65 N.Y.2d at 455.[8]

### Motion to Dismiss

Plaintiff's thirteenth and fourteenth causes of action are dismissed for failure to state a claim under which relief can be granted. Plaintiff's thirteenth cause of action, however, is dismissed without prejudice, and accordingly, Plaintiff is granted leave to amend the second part of his FCRA claim.

---

[8] Defendant also argues that the FCRA claim should be dismissed because the claim falls outside of the statute of limitations period. (Def. Mot. 9.) Neither Plaintiff's Complaint nor Opposition provide the date on which Plaintiff discovered the harm or when the purported harm occurred. *See* 15 U.S.C. § 1681p. The Court finds that the surviving FCRA claim began to accrue when the state court issued their foreclosure judgment. That date, March 31, 2016, would put the claim well within either the two or five year limitations period because Plaintiff commenced this federal action mere months after the decision in the Foreclosure Action, in October 2016. Construing the claim liberally and assuming that Plaintiff claims that the damage to his credit score resulted from the state foreclosure judgment itself, the Court finds that Plaintiff brought this claim within the statute of limitations period.

<u>FCRA</u>

Liberally construing the Complaint, Plaintiff's surviving cause of action alleges that Defendant HSBC damaged Plaintiff's credit by furnishing incorrect information to a credit rating agency as a result of the foreclosure judgment.

The purpose of the FCRA is "to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit . . . in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information." 15 U.S.C. § 1681(b). The relevant provision, § 1681s-2(b) "provides that, when a furnisher of information is notified by the consumer reporting agency that a consumer disputes the accuracy of the furnished information, the furnisher has an obligation to investigate and undertake certain other actions." *Howard v. Municipal Credit Union*, No. 05 Civ. 7488(LAK), 2008 WL 782760, at *7 (S.D.N.Y. March 25, 2008); s*ee also* § 1681s-2(b); *Mendy v. JP Morgan Chase & Co.*, No. 12 Civ. 8252(PGG), 2014 WL 1224549, at *5 (S.D.N.Y. March 23, 2014) ("However, the duty to investigate in Subsection (b) is triggered only after a furnisher of information receives notice from a credit reporting agency of a consumer's dispute") (quotations and citation omitted).

Defendant HSBC argues that Plaintiff failed to state a claim upon which relief can be granted because Plaintiff does not allege that HSBC furnished information to a credit reporting agency. Further, Defendant argues that Plaintiff failed to indicate what incorrect information HSBC provided to the credit reporting agencies. (Def. Mot. 11–12.) Plaintiff retorts by stating that it "is undisputed that the 'furnisher' of bad credit information [, such as HSBC,] is liable under the FCRA." (Pl. Opp. 18.)

Plaintiff fails to state a claim upon which relief can be granted for several reasons. First, Plaintiff failed to allege that HSBC furnished information—incorrect or otherwise— to credit reporting agencies. Second, Plaintiff "fails to allege that he ever notified the credit reporting agencies of any dispute regarding the accuracy of reported information, or that the credit reporting agencies ever then notified [HSBC] of any such dispute." *Howard*, 2008 WL 782760, at *8; *Elmore v. North Fork Bancorporation, Inc.*, 325 F. Supp. 2d 336, 341 (S.D.N.Y. 2004) ("The complaint fails to state a claim upon which relief may be granted because it fails to allege that the bank violated the duties imposed upon it *after receiving notice of the existence of a dispute from a credit reporting agency*") (emphasis added). Here, Plaintiff first alleges that his credit score was damaged as a result of the foreclosure judgment. Second, that Plaintiff contacted HSBC and that "[o]ver 60 days passed without defendants making contact and without a resolution of the unlawful deterioration of the scores the credit reporting agency" is required to keep accurate. (Compl. ¶ 173.) Plaintiff does not allege that HSBC furnished information to any credit reporting agencies, that HSBC furnished incorrect information to those agencies, that he notified the credit reporting agencies of a dispute, or that that the agencies notified HSBC, thereby triggering the requirements of § 1681s-2(b). Consequently, this cause of action must be dismissed, without prejudice.

<u>42 U.S.C. § 1983</u>

Plaintiff's fourteenth cause of action alleges a violation of 42 U.S.C. § 1983. Plaintiff claims that the loan originator provided Plaintiff with less favorable "loan products" because of Plaintiff's race. (Compl. ¶ 178.) Those terms included "higher interest rates, higher payments due per month and higher purchase price and added included charges classifying the loan in what was known as a 'subprime' loan." (*Id.*)

Defendant argues that this claim should be dismissed under res judicata or, alternatively, for being brought after the statute of limitations tolled. The Court need not linger on these questions, however, because it is abundantly clear from the face of the complaint that Defendants are not state actors for purposes of § 1983. A private entity cannot be held liable under § 1983 unless it acted under color of state law. *Graham*, 156 F. Supp. 3d at 516. A private entity acts under the color of state law for § 1983 purposes when "'(1) the State compelled the conduct [the 'compulsion test'], (2) there is a sufficiently close nexus between the State and the private conduct [the 'close nexus test' or 'joint action test'], or (3) the private conduct consisted of activity that has traditionally been the exclusive prerogative of the State [the 'public function test']." *McGugan v. Aldana-Bernier*, 752 F.3d 224, 229 (2d Cir. 2014) (citing *Hogan v. A.O. Fox Memorial Hosp.*, 346 F. App'x. 627, 629 (2d Cir.2009)). "The fundamental question under each test is whether the private entity's challenged actions are fairly attributable to the state." *McGugan*, 752 F.3d at 229 (quotations omitted) (citing *Fabrikant v. French*, 691 F.3d 193, 207 (2d Cir. 2012)).

Reading the complaint liberally, accepting Plaintiff's allegations as true, reading the state foreclosure filings and decision, and drawing all reasonable inferences therefrom, there is no indication whatsoever that Defendant HSBC was acting under the color of state law. The extent of Plaintiff's factual allegations show that HSBC funded Plaintiff's mortgage loan on the subject property and that HSBC initiated foreclosure proceedings after Plaintiff defaulted on the loan. Taking this information, along with the factual findings of the state court, Plaintiff's § 1983 claim must be dismissed because there is no factual basis on which to find that Defendants plausibly acted under the color of state law for purposes of § 1983 in funding and servicing Plaintiff's loan. *Graham*, 156 F. Supp. 3d at 516 (holding that Defendant U.S. Bank—the

Trustee of the Trust that held and foreclosed the mortgage loan— was not a state actor under § 1983).[9]

## Motion to Amend the Complaint and Leave to Re-Plad

Plaintiff filed a request to amend his complaint which this Court construed as a cross-motion to amend. (Motion to Amend Compl. 1, ECF No. 35.) Plaintiff requests to amend the complaint in order to add Robert Hum as a Defendant. Robert Hum is the "obligor or signee on the Note for the subject property." (*Id.*) Plaintiff argues that "adding Mr. Robert Hum to the case will bring full resolution for the Plaintiff to assume transfer [of] the loan fully in the Plaintiff['s] name." (*Id.*) Defendants oppose the motion, arguing that the proposed amendment would be futile because, *inter alia*, "Plaintiff has failed to show any meritorious claim against Mr. Hum or raise any legal argument that would controvert Defendants' position that the proposed amendment would be futile." (Mem. of Law in Opp. to Plaintiff's Cross-Motion to Amend Compl. ("Def. Opp.") 3–4, ECF No. 37.)

"Leave to amend may be denied on grounds of futility if the proposed amendment fails to state a legally cognizable claim or fails to raise triable issues of fact." *AEP Energy Services Gas Holding Co. v. Bank of America, N.A.*, 626 F.3d 699, 726 (2d Cir. 2010) (quoting *Milanese v. Rust–Oleum Corp.*, 244 F.3d 104, 110 (2d Cir.2001)); *accord Ruotolo v. City of New York*, 514

---

[9] The Court is cognizant of Plaintiff's concerns. It is well documented that African Americans are more likely to receive a higher rate on their loan than white borrowers. *See e.g.* Robert G. Schwemm & Jeffrey L. Taren, *Discretionary Pricing, Mortgage Discrimination, and the Fair Housing Act*, 45 Harv. C.R.-C.L. L. Rev. 375, 376 (2010) (noting that African Americans and Latinos "have often been charged substantially higher interest rates and closing costs than comparable white borrowers, resulting in blacks and Latinos incurring billions of dollars in extra payments for their mortgages"). In this case, however, there is no indication that HSBC was acting under the color of state law as a run-of-the-mill loan provider. In any event, this claim is likely precluded under res judicata because it stems from the same transaction and factual grouping as the foreclosure proceeding.

F.3d 184, 191 (2d Cir.2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). A proposed amendment is futile if it "could not withstand a motion to dismiss pursuant to Rule 12(b)(6)." *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002). While *pro se* plaintiffs are held to less stringent standards, "even *pro se* plaintiffs asserting [] claims cannot withstand a motion to dismiss unless their pleadings contain factual allegations sufficient to raise a right to relief above the speculative level." *Jackson v. N.Y.S. Dep't of Labor*, 709 F. Supp. 2d 218, 224 (S.D.N.Y. 2010) (quotations and citation omitted).

Plaintiff's proposed amendment is denied. The request does not explain why Robert Hum should be added to this case or what claims would be asserted against him. Further, given that the only potential surviving claim is the FCRA claim, it would appear that Robert Hum's addition to the case is futile. *AEP Energy Services Gas Holding Co.*, 626 F.3d at 726 ("Leave to amend may be denied on grounds of futility if the proposed amendment fails to state a legally cognizable claim or fails to raise triable issues of fact").

Nevertheless, the Court grants Plaintiff leave to amend the Complaint in order to state a valid FCRA claim against Defendant HSBC.[10] *Barms v. United States*, 204 F. App'x. 918, 919 (2d Cir. 2006) ("'[A] pro se complaint is to be read liberally,' and should not be dismissed without granting leave to re-plead at least once when such a reading 'gives any indication that a valid claim might be stated.'") (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d

---

[10] In this case, all but two of Plaintiff's claims were dismissed on purely jurisdictional or res judicata grounds. Where dismissal is based on jurisdictional or res judicata grounds, however, the problem is substantive and re- pleading will not cure it. *Francis v. Nichols*, No. 16-CV-1848 (CS), 2017 WL 1064719, *8 (S.D.N.Y. March 21, 2017) (citing *MacKinnon v. City of New York*, 580 F. App'x. 44, 46 (2d Cir. 2014) (summ. order)). Further, as previously explained, the § 1983 claim is not salvageable because there is no indication that HSBC acted under the color of state law.

Cir. 1999)). Specifically Plaintiff is granted leave to re-plead his FCRA claim concerning the

damage to his credit score as a direct result of the foreclosure judgment.

## CONCLUSION

Defendants' Motion to Dismiss the Complaint is granted, with leave to amend only the second part of Plaintiff's claim arising under the FCRA as explained above. The Clerk of Court is respectfully requested to terminate the motions at ECF Nos. 25 & 35, mail a copy of this Opinion and Order to *pro se* Plaintiff at the address below, and file proof of service on the docket. The Clerk of Court is also requested to terminate Defendants MortgageIT, Inc., Mortgage Electronic Registration Systems, Inc., Prudential Rand Realty, Inc., all persons with an interest in real property located at 4 William Street, Ossining, New York, and Does 1–100.

Plaintiff is directed to file an Amended Complaint in conformance with the above on or before May 21, 2018. Failure to timely file an Amended Complaint will result in the dismissal of the complaint and termination of the action. The remaining Defendant, HSBC Bank, USA, shall answer or seek a pre-motion conference on any potential motion to dismiss by June 20, 2018.

An in-person Initial Pre-trial Conference is scheduled for June 29, 2018, at 12:00 p.m., at the United States Courthouse, 300 Quarropas Street, Courtroom 218, White Plains, New York 10601. The parties shall confer in accordance with Fed. R. Civ. P. 26(f) at least 21 days prior to the conference and attempt in good faith to agree upon a proposed discovery plan that will ensure trial readiness within six months of the conference date. The parties shall also complete an amended Civil Case Discovery Plan and Scheduling Order and bring it to the conference.

Dated:    March 22, 2017                      SO ORDERED:
          White Plains, New York

                                          NELSON S. ROMÁN
                                          United States District Judge

**Service Address**
Sherwin A. Wilson
4 William Street
Ossining, NY 10562